IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 6:11-cr-60131-AA<br>6:15-cr-00113-AA<br>**ORDER AND OPINION** |
| v. | |
| RONALD JOLING, et al, | |
| Defendant, | |

AIKEN, District Judge:

Now before the Court is defendant Ronald Joling's Motion to Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (doc. 274) Specifically, defendant requests that his sentence be reduced immediately to one of time served and that his conditions of supervised release be amended to include 31 months of home confinement. This motion is based on the First Step Act of 2018 ("FSA"). Pub. L. No. 115-391, 132 Stat. 5194 (2018). The FSA allows prisoners to petition courts for sentence modifications, after exhausting administrative procedures, based on extraordinary and compelling

reasons—a process also known as compassionate release.  For the reasons set forth below, the motion is GRANTED.[1]

## BACKGROUND

Defendant was previously found guilty after a jury trial for one count of Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371, one count of Tax Evasion in violation of 26 U.S.C. § 7201, and two counts of Filing a False Federal Tax Return in violation of 26 U.S.C. § 7206(1) in case number 6:11-cr-60131-AA.  On December 11, 2015, this Court sentenced defendant to 97 months in custody with a three-year term of supervised release to follow.  The defendant appealed to the Ninth Circuit Court of Appeals alleging various errors at trial and sentencing.  (doc. 235) The Ninth Circuit ultimately affirmed the decisions of this Court. (doc. 268)

On February 18, 2016, defendant pleaded guilty to one count of Conspiracy to File Retaliatory Liens in case number 6:15-cr-00113-AA, pursuant to an agreement with the government.  He was sentenced by U.S. District Judge Michael McShane to 6 months in custody to run consecutively with his sentence in 6:11-cr-60131-AA.[2]

Defendant has been in custody since October 5, 2015 and additionally was held in custody for two months while awaiting trial.  Consequently, he has served a total 56 months of his original sentence.  When adding in his good time credit earned,

---

[1] The Court heard argument on this matter on April 15, 2020.  During that hearing the Court granted the motion with an opinion to follow.  An amended judgement was entered on April 17, 2020

[2] The government argues that because defendant has served over four years of sentence, the six-month sentence in his 2015 case has been completed and any sentence reduction would occur in the 2011 case.  The Court agrees.

defendant has served the equivalent of a 66-month sentence. Defendant is currently held at FCI Butner (Low) in North Carolina. Bureau of Prison ("BOP") records indicate that his current projected release date is November 30, 2022. Def. Mot. for Release Ex. F. at 3.

On September 24, 2019, defendant applied for compassionate release under 18 U.S.C. 3582(c)(1)(a) to the Warden at FCI Butner. On October 2, 2019, the Warden denied his request, finding that defendant did "not meet the criteria terminal medical conditions at this time." *Id.* Ex. E. at 1.

## STANDARD

A federal district court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); see, *Dillon v. United States*, 560 U.S. 817, 824–25 (2010). Compassionate release provides an exception in rare cases. *United States v. Holden*, 2020 WL 1673440, at *2 (D. Or. Apr. 6, 2020). Section 3582(c)(1)(A) provides that:

> the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction; [...]
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

The Policy Statement issued by the United States Sentencing Commission, § 1.B.1.13 of the U.S. Sentencing Guidelines, was last amended in November 2018 before the FSA was passed. Application Note 1 to § 1B1.13 identifies extraordinary and compelling reasons in four categories: 1.) the medical condition of the defendant, 2.) age of the defendant, 3.) family circumstances, and 4.) other reasons, as determined by the Director of the BOP, in a defendant's case amounting to an extraordinary and compelling reason, "other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt. n. 1(A)–(D).

The Policy Statement also requires a finding that "the defendant is not a danger to the safety of any other person or to the community provided in 18 U.S.C. § 3142(g)."[3] § 1B1.13(2)

Finally, the Policy Statement notes that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)." *Id*. n.4.

A defendant seeking a reduction in his terms of imprisonment bears the burden to establish both that he has satisfied the procedural prerequisites for judicial review

---

[3] Section 3142(g) identifies the following factors a court must consider in determining whether conditions of release will reasonable assure the safety of any other person and the community: 1.) the nature and circumstances of the offense charged, 2.) the weight of the evidence against the person, 3.) the history and characteristics of the person, and 4.) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

Page 4 – ORDER AND OPINION

and that compelling and extraordinary reasons exist to justify compassionate release. *United States v. Holden*, 2020 WL 1673440, at *3 (citing 18 U.S.C. § 3582(c)(1)(A))

## DISCUSSION

For the Court to exercise its authority under 18 U.S.C. § 3582(c)(1)(A) to reduce defendant's sentence it must 1.) find the appropriate administrative remedies were exhausted and the statutorily prescribed time period has passed, 2.) find that extraordinary and compelling reasons exist for a sentence reduction, 3.) consider the sentencing factors under 18 U.S.C. § 3553(a), and 4.) ensure any reduction is consistent with applicable policy statements from the sentencing commission.

Initially, the Court notes that on September 24, 2019, defendant filed a formal application for compassionate release at FCC Butner, which was rejected on October 2, 2019. More than thirty days have passed since defendant submitted his request to the warden at his facility which was ultimately denied. *See Brown v. United States*, 411 F.Supp.3d 446, 452 (S.D. Iowa 2019) ("Exhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it.") (internal citations omitted). Thus, the present motion is properly before this Court.

Next, the Court considers whether extraordinary and compelling reasons warrant a sentence reduction in this case. The Court finds that the scenario provided in U.S.S.G. § 1B1.13 cmt. N. 1(A)(ii), in combination with cmt. N. 1(D), applies in this case. Under § 1B1.13 cmt. N. 1(A)(ii), extraordinary and compelling reasons exist, *inter alia*, when "the defendant is suffering from a serious physical or medical condition, that substantially diminishes the ability of the defendant to provide self-

care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.*

Alternatively, § 1B1.13, as currently written, would not constrain this Court's ability to find extraordinary and compelling reasons in this case. As the Sentencing Commission's policy statement was not amended after enactment of the FSA "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release" … "because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020); (citing *Brown*, 411 F. Supp. 3d at 447, 499 (canvassing district court decisions)); *see also United States v. Redd*, 2020 WL 1248493, at *6. (E.D. Va. Mar. 16, 2020) ("[T]here does not currently exist, for the purposes of satisfying the ["FSA's] 'consistency' requirement, an 'applicable policy statement.'")

The Court is persuaded by the reasoning of numerous other district courts and holds that it is "not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction." *United States v. Young*, 2020 WL 1047815, at *6 (M.D. Tenn, Mar. 4, 2020); *see also United States v. Perez*, , 2020 WL 1180719, at *2 (D. Kan. Mar. 11, 2020) ("[A] majority of federal district courts have found that the most natural reading of the amended § 3582(c) and § 994(t) is that the district court assumes the same discretion as the BOP director when it considers a compassionate release motion properly before it.")

The Court first acknowledges the global crisis caused by the 2019 novel Coronavirus ("COVID-19"). The pandemic has killed thousands, sickened millions, and disrupted stability and security in the lives of billions. Americans are inundated daily with news of the spread of this highly contagious and deadly virus. As of the order granting defendant's release, there have more than 2 million reported cases worldwide. Coronavirus COVID-19 Global Cases, CENTER FOR SYSTEMS SCIENCE AND ENGINEERING AT JOHNS HOPKINS UNIVERSITY, https://coronavirus.jhu.edu/map.html (last visited Apr. 15, 2020, at 4:52 P.M.). More 600,000 of those cases have occurred in the United States. *Id.* Over 130,000 deaths around the world have attributed to the virus, nearly 25,000 of which have reported in this country. *Id.* Further spread of infection and death are likely.[4] Across the world, government and private institutions alike were unprepared for this outbreak or its ramifications. In the United States, "the President has declared a National Emergency due to the spread of the novel coronavirus and states and localities across the nation have implemented measures to stymie its rapid spread." *United States v. Muniz*, 2020 WL 1540325, at *1 (S.D. Tex. Mar. 30, 2020)

Prisoners are particularly vulnerable to infection. Center for Disease Control, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (Mar. 23, 2020), https://www.cdc.gov/

---

[4] "[T]here is no clear proof that humans develop lasting immunity to COVID-19, meaning that there are likely to be recurrences of the disease over the coming months and years until a vaccine is developed, or if and when humans do in fact develop or herd immunity." Def's Reply to Mot. for Release Ex. A. at *3.

coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. The government argues here and in similar cases that a generalized threat of contracting coronavirus is insufficient to warrant compassionate release. However, the Court finds that there is a specific and imminent threat to the defendant in this case. Indeed, the wider Federal Corrections Complex in Butner, North Carolina where defendant is held now has "the highest number of coronavirus cases of any federal correctional complex in the United States." Mitchell McCluskey, Chris Boyette and Susannah Cullinane, *A North Carolina Prison Complex Has 60 Inmates and 23 Staff Members with Coronavirus*, CNN (Apr. 12, 2020), https://www.cnn.com/2020/04/12/us/butner-prison-coronavirus-cases/index.html.

Defendant argues that his health condition is fragile, making him acutely at risk given the current spread of COVID-19. The Court has reviewed the medical records submitted. Defendant has been diagnosed with underlying conditions of hypertension, atherosclerosis, a history of transient ischemic attacks, dyslipidemia, obesity, history of left lower extremity fracture. Additionally, he was diagnosed with prostatic adenocarcinoma or high-risk group 2 prostate cancer in 2018. When defendant was examined for possible spread of this cancer, he was diagnosed with a second cancer, nasopharyngeal plasmacytoma, also in 2018.

Defendant received radiation treatment from January 30, 2019, to March 12, 2019 for his nasal passage cancer. Defendant then underwent another series of radiation for the prostate cancer from March 27, 2019, through May 23, 2019. He was then prescribed Lupron hormone therapy for 18 months, which is ongoing.

Records reveal that defendant responded well to that therapy, but he remains at high risk for developing multiple myeloma, a bone marrow cancer which could further weaken his immune response. Def's Mot. for Release Ex. C. at 44.

Defendant also offered an expert report from Dr. Thomas McNalley, a clinical fellow and associate professor at the University of California, San Francisco. Def's. Reply to Mot. for Release Ex. A. Dr. McNalley opined that defendant's underlying comorbidities and his age put him at a higher risk to contract and suffer deleterious effects of COVID-19. *Id.* at 4. Dr. McNalley recommended that defendant be released from his current environment and allowed remain sheltered in place with minimal contact beyond his immediate family. *Id.* As noted in the report, data indicates that COVID-19 infection is more severe or in older, male patients with hypertension, diabetes, obesity of immunosuppression. *Id* at 3. And older age is associated with increased mortality. *Id.* More troubling for this defendant is that that 50-80% of those who are currently treated for cancer, and 35-45% persons with a history of cancer treatment had a more severe clinical course with COVID-19 infection, with severity defined by ICU admission, invasive ventilation, and death. *Id.*at 3-4.

As Dr. McNalley noted in his report, the only protection against COVID-19 infections is social distancing, scrupulous hand hygiene, frequent cleaning of surfaces and avoiding travel. *Id.* at 4. Further, there are no effective treatment for COVID-19 besides supportive care. *Id.* While the U.S. Food and Drug administration has authorized the emergency use of chloroquine and hydroxychloroquine to treat COVID-19, it has acknowledged that there is insufficient data to guide dosing,

Page 9 – ORDER AND OPINION

duration, or patient selection for treatment. *Id.* Even so, Dr. McNalley stated that defendant is at increased risk for serious adverse effects of chloroquine or hydroxychloroquine sulfate, given his age and history of hypertension and transient ischemic attacks. *Id.*

Here, the defendant has shown that he is particularly vulnerable to COVID-19 and is being held in an institution where there has been an ongoing outbreak of cases. The Court concludes that defendant is suffering from a serious medical condition which significantly diminishes his ability to provide self-care in the environment of FCI Butner. *See United States v. Colvin*, 2020 WL 1613943, at *4 (D. Conn. Apr. 2, 2020)

"The government acknowledges that [defendant's] age and health issues make him a defendant who may benefit from home confinement." Gov't Resp. to Def.'s Mot. for Release at *1. But the government also argues that this Court should delay its decision to allow BOP to reconsider release under the recently enacted Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (March 27, 2020). Indeed, the U.S. Attorney for the District of Oregon wrote to the Warden at FCI Butner (Low) to inform her that given defendant's history his office would support early transfer to home confinement under the CARES Act.

While the Court is sympathetic to the efforts made by BOP to combat this outbreak, that response has been insufficient as evidenced by the number of infections and deaths which have already occurred in federal custodial institutions.

Page 10 – ORDER AND OPINION

*See* Covid-19 Cases, U.S. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited 4/16/2020 at 9:45 AM)  Moreover, the government has not provided any compelling reasons why defendant, when he qualifies for compassionate release, should be forced to wait for an administrative remedy because the BOP might grant similar relief under the CARES Act.  As discussed at oral argument on this matter, there is no guarantee as to when or if the BOP would grant the relief sought.[5]  The government is asking for more time, but this defendant, like many others, cannot afford to wait.[6]

Because defendant has shown that he is individually at high-risk for severe illness from COVID-19 and because inmates in detention facilities are particularly vulnerable to infection, the Court finds that defendant has demonstrated an extraordinary and compelling reason for compassionate release.

---

[5] The government also argued that BOP has already released many prisoners under the CARES ACT, and that defendant is simply further down the queue in being considered.  The Court, however, has not been able to ascertain how BOP is prioritizing release of prisoners given this defendant's condition compared with other releasees.  https://www.nbcnews.com/news/us-news/trump-lawyer-michael-cohen-be-released-prison-early-over-virus-n1185901.

[6] *See United States v. Andre Williams*, 2020 WL 1751545 (N.D. Fla. Apr. 1. 2020). There the court granted a 78-year-old defendant's motion for compassionate release on April 1, 2020 but stayed release pending approval his release plan.  The defendant then tested positive for COVID-19 on April 5 and died in hospital on April 12.  BOP, Press Releases, https://www.bop.gov/resources/news/pdfs/ 20200413_2_press_release_butner.pdf

Page 11 – ORDER AND OPINION

The Court is persuaded that the applicable § 3553(a) factors[7] support defendant's request for compassionate release and that defendant will not pose a threat to the community under § 3142(g). While the Court acknowledges the seriousness of defendant's offenses, they were nonviolent in nature. Moreover, defendant has been in custody since 2015 and has had not had any disciplinary issues during that time. The effective 66-month sentence, though it would be below the guideline range of 78 to 97 months identified by this Court at sentencing, adequately expresses the seriousness of the offense, deters criminal conduct, and protects the public under § 3553(a). The Court has also considered a letter from defendant to the Court recently expressing his remorse. As detailed above, the Court finds defendant's serious medical conditions, some of which have developed subsequent to his original sentencing, are a significant factor which warrants a reduction of the sentence.

This Court is certainly is familiar with defendant's crimes and his past behavior. No one could have predicted the current pandemic when defendant was sentenced almost five years ago, but even then, the Court imposed only a limited time in custody not a potential death sentence.

If released, defendant will be under the care of his daughter and wife at his daughter's residence in El Cajon, California. The government objects to this release

---

[7] In imposing a sentencing which is sufficient, but not greater than necessary the Court considers *inter* alia, the nature and circumstances of the offense, the history and characteristics of the defendant, community safety, the kinds of sentences available, the need to avoid unwanted disparities in sentencing, and all other obligations of sentencing including punishment, deterrence, and rehabilitation. 18 U.S.C. § 3553(a).

Page 12 – ORDER AND OPINION

plan arguing that defendant has failed to follow rules in the past. This over looks that incarceration is meant to be both punitive and rehabilitative.[8] Many individuals are noncompliant and engage in criminal behavior before serving a prison sentence. The Court is satisfied that defendant is now prepared to comply with court orders and the terms of his supervised release.

The government is also concerned that defendant would be living with his wife and daughter, who were part of his original criminal activity. The Court is persuaded that this plan is suitable given Mrs. Joling's compliance with the terms of her supervised release since leaving prison almost a year ago. Additionally, the U.S. Probation office has approved this release plan.

Further, the Court is ordering that defendant be placed on home confinement for 31 months as a condition of his release. Should the defendant fail to follow this or any other condition of release, the Court can fashion an appropriate sanction which could include further incarceration. Because of his serious medical conditions, the nature of his original offense, his record while in BOP custody, and the length of time already served, the Court is persuaded that defendant will not pose a threat to the community.

/ / /

/ / /

/ / /

---

[8] This Court has long advocated for shorter in-custody sentences and longer terms of supervision with real services to address criminogenic issues as a way meet this goal.

Page 13 – ORDER AND OPINION

## CONCLUSION

Pursuant to 18 U.S.C. § 3582(c)(1)(A), the Court finds that extraordinary and compelling reasons warrant a reduction of defendant's sentence, that defendant does not pose a danger to any other person or the community, that the § 3553(a) factors support a reduction, and that the reduction is consistent with currently applicable U.S. Sentencing Commission policy statements. The Court therefore GRANTS Defendant's Motion for Compassionate Release. (doc. 274 in 6:11-cr-60131-AA; doc. 61 in 6:15-cr-00113-AA) Defendant shall be released from custody on Monday morning April 20, 2020.

IT IS SO ORDERED.

Dated this  17th  day of April, 2020.

/s/Ann Aiken
Ann Aiken
United States District Judge
